IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM HENRY ALBERTS,<br><br>Defendant. | CR 23-131-BLG-SPW<br><br>ORDER |

Before the Court is Defendant William Henry Alberts's Motion to Dismiss Count 2 of the Indictment. (Doc. 30). Alberts seeks dismissal of the charge for possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k) on the grounds that § 922(k) is unconstitutional under the analytical framework established by *New York State Rifle and Pistol Association v. Bruen*, 597 U.S. 1 (2022).[1] (Doc. 31 at 2).

For the following reasons, the Court denies Alberts's motion.

I.  **Legal Standard**

Federal Rule of Criminal Procedure 12(b)(1) provides that a party may raise by pretrial motion any defense, objection, or request that the court can determine without

---

1. It appears from Alberts's briefing that he is making a facial challenge to 18 U.S.C. § 922(k) (*see* Docs. 30, 31), but the result is the same if he is making an as-applied challenge.

1

a trial on the merits. A pretrial motion is proper when it involves questions of law rather than fact. *United States v. Phillips*, 367 F.3d 846, 855 n.25 (9th Cir. 2004) (citing *United States v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986)). The Court has determined that Alberts's motion is appropriate for pre-trial resolution because it only involves questions of law.

## II. Facts

On April 25, 2023, law enforcement officers simultaneously initiated a traffic stop on Alberts and secured his house in Billings after receiving information that a wanted fugitive was staying on the property. (Doc. 32 at 3). Alberts consented to officers searching his property for the missing fugitive. (*Id.*). During the search, officers noticed a shotgun in plain view. (*Id.*). Officers read Alberts his *Miranda* warning, and Alberts admitted to officers that he was a convicted felon and that there were at least ten firearms in the house. (*Id.*). Officers applied for and received a search warrant for Alberts's property. (*Id.* at 3–4).

In the subsequent search, agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") recovered 15 firearms, 34 grams of suspected methamphetamine, approximately 1,576 rounds of assorted ammunition, assorted ammunition cans, and drug containers. (*Id.* at 4). When questioned by the ATF agents, Alberts admitted that he "picks up guns 'here and there,'" and that one of the firearms had an obliterated serial number. (*Id.* at 5). Alberts was charged with one

count of possessing an unregistered silencer in violation of 26 U.S.C. §§ 5841, 5861(d) ("Count 1"), and one count of possessing a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k) ("Count 2"). (Doc. 1).

Alberts moved to the dismiss Count 2 (Doc. 30), and the Government responded (Doc. 32). Alberts did not reply.

### III.  Analysis

18 U.S.C. § 922 prohibits certain persons from possessing, acquiring, manufacturing, or selling firearms; the carrying of a firearm in certain locations; and the possession of certain firearms. The subsection in question here, § 922(k), prohibits a person from knowingly "possess[ing] or receiv[ing] any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(k).

Alberts generally argues the Court should dismiss Count 2 because § 922(k) is unconstitutional in light of the Supreme Court's decision in *Bruen*. (Doc. 31 at 3–8).

In *Bruen*, the Supreme Court held that the Second Amendment protects an individual's right to carry a handgun for self defense outside the home and rejected the means-end scrutiny test that courts of appeal had been applying when assessing the constitutionality of firearms regulations. 597 U.S. at 19. Instead, the Court held that a court must apply the two-step test "set forth in *Heller*": (1) whether the conduct

in question is covered by the plain text of the Second Amendment, and (2) "whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 26–27 (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008)). When the challenged regulation addresses an issue that has persisted since the founding era, a lack of a similar historical regulation "is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* at 26.

The Government has the burden to demonstrate that a law is consistent with the Nation's history and tradition. *Id.* at 33–34. The Government does not need to point to an identical statute but only a "representative historical analogue." *Id.* at 30. When a court encounters "unprecedented societal changes or dramatic technological changes," the court must use a "more nuanced approach" in finding a historical analogue. *Id.* at 27–28. Because the Constitution and Second Amendment were created to "be adapted to the various crises of human affairs," they can be applied to "circumstances beyond those the Founders specifically anticipated." *Id.* at 28 (citing *McCulloch v. Maryland*, 4 Wheat. 316, 416 (1819)). When analyzing the constitutionality of a firearms regulation, the Court considers the text of the Second Amendment's right to "keep and bear arms" as it was understood "when the people adopted [it.]" *Heller*, 554 U.S. at 634–35.

Importantly, in a concurring opinion in *Bruen*, Justice Kavanaugh, joined by

4

the Chief Justice, agreed with the Court's opinion in full but underscored that "the Second Amendment allows a variety of gun regulations." 597 U.S. at 80 (internal quotation marks omitted). He explained that the Court recognized that the Second Amendment's right to keep and carry arms had limits, specifically that the Government could prohibit the "carrying of dangerous and unusual weapons." *Id.* at 81 (quoting *Heller*, 554 U.S. at 627).

Alberts argues that, under *Bruen*, his possession of a firearm with an obliterated serial number is protected by the plain text of the Second Amendment. (Doc. 31 at 7). He asserts that the Government will be unable to meet its burden of showing that the regulation of such firearms is consistent with the Nation's history and tradition.[2] (*Id.*). He further asserts that the requirement that manufacturers place serial numbers on firearms, as well as the prohibition on the possession of a gun with an obliterated serial number, were only enacted in 1968 and "unknown to the Founding Fathers." (*Id.*). Accordingly, he moves the Court to dismiss Count 2 of the Indictment.

In response, the Government argues that the text of the Second Amendment does not protect Alberts's conduct because "'the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes'" (Doc. 32 at 2 (quoting *Heller*, 554 U.S. at 625), and the majority of federal district

---

2. Alberts also argues that felon disarmament laws were "unknown to the Founding Fathers." (Doc. 31 at 6). Alberts was not indicted for being a felon in possession, so the Court finds this argument irrelevant to the instant motion.

courts addressing this issue have determined that § 922(k) is constitutional, (*id.* at 9). At step 1 of its *Bruen* analysis, the Government argues that the plain text of the Second Amendment does not protect the possession of a firearm with an obliterated serial number. (*Id.* at 10). At step 2, the Government argues that § 922(k) is consistent with historical firearms regulation. (*Id.* at 14).

The Court will address each argument in turn.

A. Bruen *Step 1: Second Amendment's Plain Text*

The threshold question in this case is whether the text of the Second Amendment protects the conduct at issue—the possession of a firearm with an obliterated serial number. *See Bruen*, 597 U.S. at 24.

The Government argues that the Second Amendment's text does not protect the possession of a firearm with an obliterated serial number. (Doc. 32 at 10). First, such firearms are "not typically possessed by law-abiding citizens for lawful purposes," so the burden will "almost always fall on those intending to engage in illicit behavior." (*Id.* at 11–12 (citing *Heller*, 554 U.S. at 625; *United States v. Marzzarella*, 614 F.3d 85, 99 (3rd Cir. 2010), *overruled on other grounds by Bruen*, 597 U.S. 1)). Second, the prohibition of possessing a firearm with an obliterated serial number does not "impair the use or functioning of the weapon in any way." (*Id.* at 12 (citing *Marzzarella*, 614 F.3d at 94)). Alberts does not reply to these arguments.

Since *Bruen* was decided, no circuit court has addressed whether the plain text

6

of the Second Amendment protects the right to possess a firearm with an obliterated serial number. Federal district courts are divided on the question, with most upholding the constitutionality of § 922(k). *See, e.g., United States v. Holton*, 639 F. Supp. 3d 704, 710–11 (N.D. Tex. 2022) (finding that § 922(k) did not "infringe on the right to bear arms for self-defense"); *United States v. Serrano*, 651 F. Supp. 3d 1192, 1210 (S.D. Cal. Jan 17, 2023) ("A law requiring that firearms have serial numbers simply does not infringe a law-abiding citizen's right to keep and bear arms for self-defense and other lawful purposes."); *United States v. Price*, 635 F. Supp. 3d 455, 460 (S.D.W.V. 2022) (holding that "the conduct prohibited by Section 922(k) falls squarely within the Second Amendment's plain text."). The Court therefore will conduct its own analysis of the text.

The Second Amendment's plain text guarantees that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. "Possession" is encompassed by the definition of the word "keep." *See Heller*, 554 U.S. at 582–83 ("'Keep arms' was simply a common way of referring to possessing arms[.]"). To "bear" a firearm means that a person "carr[ies]" it. Bear, *Samuel Johnson's Dictionary* (1st ed. 1755). Because § 922(k) does not prevent a citizen (the people) from possessing (keeping) and carrying (bearing) a firearm for self-defense, the Second Amendment does not protect the conduct prohibited by § 922(k).

Moreover, § 922(k) only prevents a person from possessing a firearm with an

obliterated serial number, not the same make and model of the firearm with an intact serial number. "[F]irearms of similar make and model are essentially fungible, and 'the presence of a serial number does not impair the use or functioning of a weapon in any way[.] . . . [A] person is just as capable of defending himself with a marked firearm as with an unmarked firearm.'" *Holton*, 639 F. Supp. 3d at 711 (quoting *Marzzarella*, 614 F.3d at 94, *abrogated on other grounds by Bruen*, 597 U.S. 1).

Additionally, the text of the "Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 625; *see also Bruen*, 597 U.S. at 81 (Kavanaugh, J., concurring) (quoting *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 786 (2010)). Alberts has not argued that a gun with an obliterated serial number is a weapon typically possessed by a law-abiding citizen for lawful purposes. Conversely, the Government has effectively argued that "a law-abiding citizen would have no reason to remove a serial number from a firearm" because obliteration of the serial number damages the firearm, reduces the value, and makes it more difficult to recover if stolen. (Doc. 32 at 14).

The Court finds that a firearm with an obliterated serial number is a weapon "not typically possessed by law-abiding citizens for lawful purposes"; rather, possessing a firearm with an obliterated serial number provides "obvious advantages" to criminals trying to avoid detection by law enforcement. *See Heller*, 554 U.S. at 625; Anthony A. Braga et al., *Interpreting the Empirical Evidence on Illegal Gun*

*Market Dynamics*, 89 J. Urban Health 779, 788 (2012).

Thus, § 922(k) is constitutional at *Bruen* step 1 because the plain text of the Second Amendment does not protect the prohibited conduct—possessing a firearm with an obliterated serial number.

B.   Bruen *Step 2: Second Amendment's Plain Text*

Even if § 922(k) proscribes conduct protected under the Second Amendment, the Government has identified numerous historical analogues demonstrating that § 922(k) is consistent with the Nation's historical tradition of firearm regulation. *See Bruen*, 597 U.S. at 24. Although modern serial numbers did not exist at the time the Second Amendment was ratified in 1791 as part of the Bill of Rights to the Constitution, "the Constitution can, and must, apply to circumstances beyond those the Founders specifically anticipated." *Id.* at 28. The Court finds that the United States has met its burden by identifying historical regulations that served to regulate firearms and "impose[d] a comparable burden on the right of armed self-defense." *Id.* at 29.

In analyzing whether the prohibition on the possession of a firearm with an obliterated serial number is part of the Nation's history and tradition, the Court begins with "how and why" § 922(k)'s conditions burden Alberts's Second Amendment right to bear arms for self-defense. *See United States v. Perez-Garcia*, ___ F.4th ___, 2024 WL 1151665, at *10 (9th Cir. 2024).

Section 922(k) prohibits any person:

knowingly . . . transport[ing], ship[ping], or receiv[ing], in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered or t[he] possess[ing] or recei[ving of] any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

As to the "how," the burden § 922(k) imposes on a person's Second Amendment rights is minimal: namely, the text of § 922(k) only prohibits a person from possessing firearms with obliterated serial numbers.

As to the "why," the legislative history makes clear that § 922(k) was enacted to improve public safety through the prevention and investigation of gun crimes. The legislative history of the 1938 Federal Firearms Act and the Gun Control Act of 1968 show that Congress was concerned about "preventing and solving gun crimes." Gun Control Act of 1968: Hearings on S. 3694, 3604, 3634, 3637 Before the Subcomm. to Investigate Juvenile Delinquency, 90th Cong. 6 (1968). Requiring serial numbers on firearms helps law enforcement "identify suspects involved in criminal violations" and "determine if [a] firearm is stolen[.]" Identification Markings Placed on Firearms (96R-341P), 66 Fed. Reg. 40596, 40597 (Aug. 3, 2001) (codified at 27 C.F.R. § 178 (2002)).

Having established the "how" and "why" § 922(k) burdens Alberts's Second Amendment rights, the Court turns to whether the prohibition in § 922(k) is part of

10

the Nation's history and tradition of prohibiting dangerous and uncommon weapons.

The Government argues that § 922(k) is analogous to historical laws regulating firearms and gunpowder. (Doc. 32 at 14). It asserts that colonial and state legislatures regulated firearms, the firearms trade, and gunpowder and points to the following historic analogues:

(1) A colonial Connecticut law banned residents from selling firearms outside the colony, (*id.* at 15 (citing *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 685 (9th Cir. 2017))); *see* J. Hammond Trumbull, The Public Records of the Colony of Connecticut Prior to the Union with New Haven Colony, May 1665, 138–39, 145–46 (1850);

(2) A 1795 Pennsylvania law required gunpowder to be stored in the public magazine, (Doc. 32 at 15–16 (citing 3 Laws of the Commonwealth of Pennsylvania, from the Fourteenth Day of October, One Thousand Seven Hundred (1810)));

(3) An 1809 Massachusetts law required the inspection of all gunpowder manufactured in the Commonwealth or stored in a magazine, (*id.* at 16 (citing 2 General Laws of Massachusetts from the Adoption of the Constitution to February 1822, 199 (1823)));

(4) An 1805 Massachusetts law required gun barrels to be proved and marked, and that prohibited the obliteration of the proof marks (*id.* (citing 3 Laws of

11

the Commonwealth of Massachusetts from November 28, 1780 to February 28, 1807, at 257 (1807))); and

(5) An 1821 Maine law appointed "suitable persons" to be "provers of the barrels of all new, or unused firearms" and levied a $10 fine on any person with a firearm without the mark. (*Id.* at 17–18 (citing Laws of the State of Maine 546 (1830)).

The Court finds these historic precedents show a national history and tradition of the government regulating and marking firearms. The Court is especially persuaded by the 1805 Massachusetts law (the "Act") requiring the proving and marking of gun barrels.[3]

The Act was enacted to protect citizens from unsafe firearms. 3 Laws of the Commonwealth of Massachusetts from November 28, 1780 to February 28, 1807, at 259. It empowered the governor of Massachusetts to appoint "provers of firearms," whose job it was to test—or prove—all firearms that were manufactured in Massachusetts.[4] *Id.* Firearms that could "stand the proof" were stamped. *Id.* at 260. Any person who purchased a firearm without the stamp was fined $10. *Id.* at 260–61.

While this law is not a "historical twin," *Bruen* does not require such, and the

---

3. The 1821 Maine statute is similar to the Act, in that it restricted the sale of unmarked firearms by empowering the Governor to appoint persons to be "provers of the barrels of all new, or unused firearms" and providing a fine of $10 per barrel sold. Laws of the State of Maine 546 (1830)).
4. To prove a firearm means to "test" or "try" it. Prove in *Samuel Johnson's Dictionary* (1st ed. 1755). The Court interprets the Act as requiring that a "prover of firearms" test each gun to make sure that it worked properly.

Court finds the Government has properly identified a historical analogue. *See* 597 U.S. at 29–30. Both the Act and § 922(k) were enacted in response to concerns for public safety presented by firearms. Both laws minimally burden the right to carry firearms for self-defense by requiring that the firearm be marked by the government. While the Act did not punish just the possession of such a firearm, it punished those who sold and purchased unmarked firearms, effectively restricting the possession of unmarked firearms.

Accordingly, the Court finds the historic evidence sufficient to show that this Nation has a history and tradition of regulating and marking firearms. Therefore, Section 922(k) is constitutional and does not violate Alberts's Second Amendment rights.

## IV. Conclusion

The restriction on possessing a firearm with an obliterated serial number in 18 U.S.C. § 922(k) is constitutional, and Alberts's facial challenge to the statute fails. Accordingly, IT IS SO ORDERED that Alberts's Motion to Dismiss the Indictment (Doc. 30) is DENIED.

DATED this 5th day of April, 2024.

Susan P. Watters
SUSAN P. WATTERS
U.S. DISTRICT COURT JUDGE

13